# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 94 C 920 | **DATE** | ½/2003 |
| **CASE TITLE** | ED SMITH, et al vs. THE CITY OF CHICAGO, | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Both parties' motions to reconsider the Court's July 31, 2002 Order are granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| ✓ | Notified counsel by telephone. | | JAN 07 2003 date docketed | | |
| | Docketing to mail notices. | | | | 113 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | 03 JAN -6 PM 3:46 | date mailed notice | | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ED SMITH, et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) | No. 94 C 920 |
| THE CITY OF CHICAGO, | ) ) ) | Paul E. Plunkett, Senior Judge |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

On July 31, 2002, the Court granted in part and denied in part the City's motion for summary judgment. Both parties have filed motions to reconsider that Order ("the July Order"). For the reasons set forth below, both motions are granted in part and denied in part.

### Discussion

#### City's Motion

In the July Order, the Court dismissed plaintiffs' First Amendment claims for lack of standing, but left certain of their equal protection claims in tact. Those decisions are inconsistent, the City says, because the latter claim is dependent on the former; that is, plaintiffs cannot have standing for a speech-based equal protection claim unless they also have standing for the First Amendment claim. (City's Mem. Supp. Mot. Clarify & Recons. at 3.)

The Court disagrees. The injury that supports standing for a First Amendment claim is the impairment of free speech. As we noted in the July Order, plaintiffs proffered no evidence to suggest

that their speech rights were, in fact, impaired by the City's alleged conduct. Thus, they have no standing for their First Amendment claims. The injury that supports standing for the equal protection claim, however, is unjustified disparate treatment. Plaintiffs offered facts which, when viewed in the light most favorable to them, suggest that the City applied its attorney's-fees ordinances differently to the plaintiffs than to other aldermen without a rational basis for doing so. Accordingly, the record suggests that plaintiffs have the requisite injury to support standing for their equal protection claims.

The problem, as the City points out, is that the unequal treatment is the only injury plaintiffs appear to have suffered. Though the record suggests that plaintiffs' remap lawyers were not paid in full for their work, there is no evidence that *plaintiffs* are liable for those unpaid sums. Thus, they have no standing to seek a damage award in that amount. Nor do they have standing to seek declaratory relief, as a declaration that the City's conduct violated plaintiffs' rights would do nothing to redress their injury. Finally, as we noted in the July Order, there is no evidence, other than alleged past behavior, to suggest that the City will apply its ordinances to plaintiffs in an unconstitutional manner in the future. Thus, plaintiffs have no standing to seek an injunction prohibiting the City from engaging in such conduct in the future.

Plaintiffs' failure to demonstrate the threat of future injury, the City says, also dooms their request for an injunction ordering the City to pay the fees and costs still due their lawyers. That injunction, like one barring the City from applying its ordinances unconstitutionally, would require the City to take action in the future. As such, the City argues, it seeks prospective relief, which can be granted only upon a showing that plaintiffs are likely to suffer harm in the future.

Certainly, both injunctions, indeed all injunctions, seek prospective relief – a court cannot order someone to do something in the past – but that fact has no bearing on the standing analysis. The issue is not when the relief would be provided, but the nature of the injury to which the relief is addressed. Plaintiffs' claim for an injunction barring the City from applying the fees ordinances in a discriminatory manner, which is referred to as "future injunctive relief" in the July Order, seeks to prevent a future injury. Their claim for an injunction requiring the City to pay their lawyers' outstanding fees, which is referred to as "present injunctive relief" in the July Order, seeks to redress an injury that has already occurred: their unequal treatment under the ordinances. Standing for the former injunction requires proof that the City is likely to apply the fees ordinances unequally in the future. Standing for the latter, like for an order of reinstatement, does not. See DAN B. DOBBS, DOBBS LAW OF REMEDIES § 2.9 at 225 (2d ed. 1993) ("The reparative injunction requires the defendant to restore the plaintiff to a preexisting entitlement. . . . A preventive injunction attempts to prevent the loss of an entitlement in the future. . . . The reparative injunction goes when the evidence shows that an existing right has been violated but can be repaired or restored effectively. The preventive injunction, on the other hand, is not proper unless the defendant is threatening to commit a wrong in the future.")

Even if plaintiffs have standing to request it, the City says that equitable principles preclude an injunction to pay money. An order to pay plaintiffs' lawyers, the City says, is the equivalent of a damage award, a form of relief outside the realm of equity.

The Court disagrees. Not every remedy involving the payment of money constitutes a damage award. In the words of the Supreme Court:

> Our cases have long recognized the distinction between an action at law for damages – which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation – and an equitable action for specific relief – which may include an order providing for the reinstatement of an employee with backpay, or for the recovery of specific property or monies, ejectment from land, or injunction either directing or restraining the defendant officer's actions. The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as "money damages."

Bowen v. Massachusetts, 487 U.S. 879, 893 (1988) (internal quotation marks and citations omitted). Should plaintiffs prevail, the requested injunction would not compensate them for their constitutional injury – the money would not even go to them – but would accord them the equal treatment to which they are entitled. See id. at 895 ("Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies are not substitute remedies at all, but an attempt to give the plaintiff the very thing to which he was entitled.") (internal quotation marks and citation omitted).

Plaintiffs' reliance on Native Vill. of Noatak v. Blatchford, 38 F.3d 1505 (9th Cir. 1994) is misplaced. The plaintiffs in that case, three native villages in Alaska, claimed that the State's expansion of a native village revenue-sharing program to include non-native villages was racially motivated. Id. at 1508. Among other relief, the villages requested an injunction requiring the State "to pay them the money they would have received but for the administrative expansion of the program." Id. The Ninth Circuit held that the requested "injunction" was a damage claim in disguise, one that was barred by the Eleventh Amendment. Id. at 1512.

The relief sought by the plaintiffs in Noatak is qualitatively different from that sought by plaintiffs here. The Noatak plaintiffs were not seeking to require the State to accord them equal treatment under the revenue-sharing program, i.e., to pay them funds to which the statute entitled them but the State had withheld. Rather, they were seeking to recover the money they lost when the

State ended the program's native-village preference. An injunction ordering the State to pay the sums to which the villages were entitled would eradicate the discrimination, not compensate the villages for it. An "injunction" ordering the State to pay the villages the sums they would have received but for the program's discriminatory expansion would compensate them for the discrimination, but would do nothing to reverse it. In short, the decision made by the Noatak court supports the Court's, not the City's, view of the requested injunction.

There is, however, one point made by the City with which the Court agrees. In the July Order, we said that the allegedly unequal treatment could be redressed by an injunction ordering the City to pay the fees plaintiffs incurred in both the remap suits and this one. (July Order at 11-12.) Ordering the City to pay the fees plaintiffs incurred in connection with this suit would not garner them equal treatment under the ordinances. As such, it is not properly the subject of injunctive relief.

Even if plaintiffs have standing to pursue certain equal protection claims, the City contends that those claims fail on the merits. According to the City, its refusal to pay plaintiffs' remap fees neither created a suspect class nor impinged on any fundamental rights. Thus, the City says, its action is subject only to rational-basis review, a standard that it easily satisfies.

Plaintiffs say that the tripartite equal protection analysis applies only to facial challenges to legislation, not to claims, like theirs, that challenge the application of laws. Application claims, plaintiffs say, are evaluated by the standard articulated by the Court in the July Order; that is, they succeed if the plaintiff proves that he is a member of a class, he was treated differently than those similarly situated outside of his class and the difference in treatment was because of plaintiff's membership in the class.

In the Court's view, there is no tension between the standard espoused by the City and that espoused by plaintiffs. Rather, they seem to be two sides of the same coin. Under the former, government action that does not create a suspect class or infringe fundamental rights passes muster if there is a rational basis for it. Under the latter, a state actor's inability to articulate a rational basis for its dissimilar treatment of people who are similarly situated, or a compelling one for action that creates a suspect class or infringes fundamental rights, gives rise to an inference of discriminatory intent. Regardless of how it is phrased, an equal protection claim rises and falls on the state actor's ability to justify its dissimilar treatment of similarly-situated groups.

In this case, plaintiffs contend, that justification must be compelling, not merely rational, because the City's actions infringed their First Amendment rights by "denying them a benefit because of [their] unwanted political beliefs." (Pls.' Reply Supp. Mot. Recons. at 8.) But the Supreme Court has distinguished between penalizing speech and subsidizing it. The difference is illustrated by comparing Regan v. Taxation with Representation of Washington, 461 U.S. 540 (1983) with Speiser v. Randall, 357 U.S. 513 (1958). In Speiser, the plaintiffs challenged California's veteran property tax exemption, the receipt of which was conditioned on the veterans signing an oath not to advocate the violent overthrow of the government. The Court said that the exemption infringed the veterans' First Amendment rights, saying:

> It cannot be gainsaid that a discriminatory denial of a tax exemption for engaging in speech is a limitation on free speech. . . . It is settled that speech can be effectively limited by the exercise of the taxing power. To deny an exemption to claimants who engage in certain forms of speech is in effect to penalize them for such speech. Its deterrent effect is the same as if the State were to fine them for this speech.

Id. at 518 (citation omitted). In Regan, a nonprofit lobbying organization challenged the IRS regulation that grants tax-exempt status only to those nonprofit organizations that do not engage in substantial lobbying. That regulation, plaintiff asserted, amounted to a monetary penalty for the exercise of its First Amendment rights. The Court disagreed:

> [Plaintiff] is certainly correct when it states that we have held that the government may not deny a benefit to a person because he exercises a constitutional right. See Perry v. Sindermann, 408 U.S. 593, 597, 92 S. Ct. 2694, 2697, 33 L. Ed. 2d. 570 (1972). But [plaintiff] is just as certainly incorrect when it claims that this case fits the Speiser-Perry model. The [IRS] Code does not deny [plaintiff] the right to receive deductible contributions for its non-lobbying activity, nor does it deny [plaintiff] any independent benefit on account of its intention to lobby. Congress has merely refused to pay for the lobbying out of public monies.

461 U.S. at 545. Taken together, Speiser and Regan teach that the First Amendment is not violated when the only "penalty" exacted by government action is requiring plaintiff to pay the costs associated with expressing himself. If, however, the government imposes an independent cost, either by levying a fine or by withholding an independent benefit, because plaintiff exercises his freedom of speech, the First Amendment is violated.

Under that analysis, the City's actions did not impinge on plaintiffs' First Amendment rights. The City did not withhold an independent benefit from plaintiffs because they chose to express their opposition to the referendum map through litigation. Rather, the City chose not to subsidize that exercise of their free speech, action that Speiser and Regan deem constitutional. Because the City's action did not infringe plaintiffs' First Amendment rights, it is not subject to strict-scrutiny analysis.

The does not mean, however, that the City is off the hook. To defeat plaintiffs' equal protection claims, the City must show that the two groups of aldermen were not similarly situated, or proffer a rational explanation for its decision to treat the two similarly-situated groups differently.

In its summary judgment brief, the City focused on the former issue, arguing that the two groups were not similarly situated because one sued the City and the other defended it. (See City's Mem. Supp. Renewed Mot. Summ. J. at 16-17.) In its motion to reconsider, the City merges the two issues, arguing that its treatment of the two groups was rational because they were materially different. (See City's Mem. Supp. Mot. Recons. at 11-12 & n.9.)

But the two issues are distinct. If the two groups of aldermen were not similarly situated, the City would not need to justify their dissimilar treatment because the equal protection clause would not be implicated at all. Wroblewski v. City of Washburn, 965 F.2d 452, 459 (7th Cir. 1992) (equal protection clause mandates equal treatment only for those who are similarly situated). Thus, the first step in equal protection analysis is to determine whether the two groups are, in fact, similarly situated. Johnson v. Smith, 696 F.2d 1334, 1336 (11th Cir. 1983).

To do that, we "must look at all relevant factors, the number of which depends on the context of the case." Chavez v. Illinois State Police, 251 F.3d 612, 636 (7th Cir. 2001) (internal quotation marks and citation omitted). Though there is no "magic formula" for making the determination, evidence that the defendant has not previously used the characteristics that it says make plaintiff "different" to distinguish between groups subject to the contested government action is highly relevant. See id. at 637 (rejecting defendant's contention that plaintiff-motorist was not similarly situated to another because the former's car was red, was a rental and had out-of-state license plates because undisputed evidence showed that defendant's "officers do not stop motorists on the basis of these variables.")

The City says plaintiffs were different from the administration aldermen for purposes of the fees ordinances because they sued the City while the administration aldermen defended it. As in Chavez, however, there is evidence here to suggest that the City has not previously relied on the suing/defending distinction to determine whether an alderman's legal fees will be paid. (See Pls.' LR 56.1(b)(3)(B) ¶ 65 (stating that City paid legal fees of aldermen-plaintiffs in Roti who sued the City).)

The City says its treatment of the Roti plaintiffs is irrelevant to the analysis because: (1) that suit raised "discrete issues of pure law"; (2) it was not subject to a statutory fee-shifting mechanism; (3) the decision to pay those fees was made six years before the decision plaintiffs contest; and (4) the decision was made under a different administration. (City's Mem. Supp. Mot. Recons. at 12-13 & n.7.) We would agree if there were evidence to suggest that those factors actually impacted the City's fee payment decisions. But there isn't. There is no evidence that the City evaluates the legal issues in a case or potential for fee recovery before deciding whether fees will be paid. Moreover, the record suggests that, despite the passage of time and change in administration, the fees ordinances and the decision-maker on fee requests, Alderman Burke, remained the same. (See Pls.' LR 56.1(b)(3)(B) Stmt. ¶¶ 1, 36, 42, 65, 67; Pls.' Exs. 6, 7, 9.) Because there is no evidence that the factors highlighted by the City had any impact on the fee payment process, the Roti evidence is relevant to determining whether the two groups of aldermen were similarly situated.

In short, though the City could constitutionally distinguish between aldermen who sue and those who defend in the application of its attorney's fees ordinances, the Roti evidence suggests that it does not. Having offered no other basis for distinguishing between the two groups, the City had

to provide a rational explanation for its less favorable treatment of plaintiffs, other than the suing/defending distinction, to succeed on its motion. None was provided. The City's motion for summary judgment on plaintiffs' equal protection claims was, therefore, properly denied.

The City's last argument is that the Court erred in holding that Alderman Garcia had standing to pursue a damage claim for the fees still owed to his lawyer, Mr. Piers. The City contends that Alderman Garcia did not carry his burden of showing that he remained liable to Mr. Piers for the outstanding fees. The Court disagrees. On a summary judgment motion, the Court must view all evidence and draw all inferences in favor of the non-moving party, in this instance Alderman Garcia. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000). It is undisputed that Mr. Piers represented Alderman Garcia in the remap suits. (City's Resp. Pls.' LR 56.1(b)(3)(B) Stmt. ¶ 18.) Moreover, there is no evidence that Mr. Piers absolved Alderman Garcia, through a contingency agreement or otherwise, of his obligation to pay Mr. Piers' fees. Absent evidence to the contrary, it is reasonable to infer from the fact that Alderman Garcia retained Mr. Piers that Mr. Piers expects payment from his client for all services rendered. Accordingly, as we said at page nine of the July Order, Alderman Garcia has standing to pursue an equal protection damage claim to recover the fees owed to Mr. Piers.[1] The statement to the contrary on page twenty-one of the July Order is erroneous and will be stricken.

---

[1]Of course, the City may seek to have that claim dismissed for lack of subject matter jurisdiction at trial, if the evidence establishes that Alderman Garcia is not liable for those fees.

### Plaintiffs' Motion

Plaintiffs argue that the Court erred in holding that they have no standing to pursue their First Amendment claims. The Court rejected their claims, plaintiffs say, because they lacked evidence that their speech was chilled by the City's failure to pay their legal fees. According to plaintiffs, the correct standard is likelihood of chilling, a standard they claim to meet.

As an initial matter, the Court evaluated the evidence of chilling effect because that is the *only* injury plaintiffs identified to support their standing for their First Amendment claims. (See Pls.' Mem. Law Opp'n Def.'s Renewed Mot. Summ. J. at 21.) Had plaintiffs argued that the injury they sustained was a likelihood of chilling rather than actual chilling of speech, the Court would have addressed the argument. Their failure to do so is not a grounds for reconsidering the July Order.

In any event, as should be clear from the foregoing discussion, plaintiffs' First Amendment claims would fail even if they had suffered a concrete and particularized injury. The City's failure to subsidize plaintiff's speech does not violate the First Amendment. Regan, 461 U.S. at 545. Thus, plaintiffs would not have viable First Amendment claims even if they had standing to assert them.

Plaintiffs also contend that the Court erred in concluding that they lacked standing to assert Fourteenth Amendment claims for declaratory relief. That decision hinged on the redressability component of standing. As we said in the July Order, "[t]hough plaintiffs have suffered a concrete injury, a declaration that the City's failure to pay their legal fees violated their equal protection rights would do nothing to redress it." (July Order at 12.) Plaintiffs say that conclusion is erroneous because declaratory relief may be awarded as "a prelude" to their requested injunctive relief. (Pls.' Mem. Supp. Mot. Recons. at 6.)

The Seventh Circuit has said that declaratory relief can be "a prelude [to] or substitute for injunctive relief." Bontkowski v. Smith, 305 F.3d 757, 761 (7th Cir. 2002) (citation omitted). But such relief is appropriate, the court said, only when "the plaintiff wants a change in the defendant's conduct but believes that it will ensue from a declaration of plaintiff's rights, and by seeking just the declaration the plaintiff avoids the burden of formulating and justifying a precise injunctive remedy." Id. As that explanation makes clear, the redressability component of standing still applies to the "prelude" theory of declaratory relief; that is, such relief is appropriate only if the requested declaration will redress plaintiff's injury by inducing the defendant to cease its ongoing unlawful behavior. In this case there is no ongoing behavior that a declaratory judgment might induce the City to change. Thus, plaintiffs do not have standing to seek a declaration as a prelude to injunctive relief. See Dickinson v. Indiana State Election Bd., 933 F.2d 497, 503 (7th Cir. 1991) (reversing district court's dismissal of claim for declaratory relief in Voting Rights Act case because declaration "could . . . provide the impetus" for the legislature to reapportion the contested districts).

Finally, plaintiffs challenge the Court's conclusion that, with the exception of Alderman Garcia, they lack standing to pursue damage claims for the money still owed to their remap attorneys. The Court's ruling, plaintiffs say, ignores the fact they suffered a substantial constitutional injury, unequal treatment under the law. According to plaintiffs, that injury can and should be redressed by an award of damages.

The Court agrees, in part. To the extent plaintiffs' equal protection rights were violated, they did suffer an injury. But, as we noted in the July Order, there is no evidence that the alleged constitutional violation caused them any monetary loss. Any monetary loss, the record establishes,

-12-

was suffered by their counsel. Because plaintiffs were not injured financially by the City's failure to pay their attorneys' fees, they have no standing to pursue damage claims to recover those fees.

They do, however, remain eligible to recover nominal damages for any constitutional violation, see, e.g., Carey v. Piphus, 435 U.S. 247, 266 (1978) (holding that "the denial of procedural due process [is] actionable for nominal damages without proof of actual injury"); Kincaid v. Rusk, 670 F.2d 737, 746 (7th Cir. 1982) (holding that plaintiff whose constitutional rights were violated but suffered no compensable injury was entitled to award of nominal damages), an issue not addressed in the July Order.[2] To the extent the July Order dismisses plaintiffs' equal protection claims for nominal damages, it is vacated.

---

[2]That oversight is hardly surprising, however, given the fact that plaintiffs do not request nominal damages in their complaint or discuss them in the papers they submitted in opposition to the City's motion for summary judgment. In fact, the first time plaintiffs even mentioned nominal damages was in their response to the City's motion to reconsider. (Compare Pls.' Mem. Law Opp'n Def.'s Renewed Mot. Summ. J. at 22 with Pls.' Resp. City's Mot. Recons. at 5.)

## Conclusion

For the reasons set forth above, both parties' motions to reconsider the Court's July Order are granted in part and denied in part. The July Order is amended in the following respects: (1) the sentence at the bottom of page eleven and the top of page twelve that states: "Moreover, an injunction requiring the City to pay the legal fees plaintiffs incurred in both the remap suits and this one would redress that injury" is amended to state: "Moreover, an injunction requiring the City to pay the legal fees plaintiffs incurred in the remap suits would redress that injury"; (2) the portion of the Order dismissing the speech-based equal protection damage claims of all plaintiffs, but Alderman Garcia, is vacated. The Order is amended to dismiss the speech-based equal protection claims of all plaintiffs, but Alderman Garcia, seeking to recover as damages the outstanding fees and costs owed to their remap counsel, but preserve those plaintiffs' equal protection claims for nominal damages; (3) the sentence at page twenty-one that states: "Moreover, there is no genuine issue of material fact on Mr. Garcia's Fourteenth Amendment damage claim or on all plaintiffs' race-based Fourteenth Amendment claims for present injunctive relief" is amended to state: "Moreover, there is no genuine issue of material fact on all plaintiffs' race-based Fourteenth Amendment claims for present injunctive relief." In all other respects, the July Order stands unaltered.

**ENTER:**

_____
UNITED STATES DISTRICT JUDGE

DATED: /- 2- 03