## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 94 C 920 | **DATE** | 11/2/2004 |
| **CASE TITLE** | Ed H. Smith, et al vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Plaintiffs' motion to amend this Court's Final Judgment (Doc . No. 262-1) is granted and Plaintiffs are awarded $168,956.24 in prejudgment interest. Plaintiffs must provide the court with documentation confirming that all of the monies received in this matter were paid to their attorneys.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| ✓ | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices: 4

NOV 0 3 2004 date docketed

11/2/2004 date mailed notice

Document Number: 260

courtroom deputy's initials: ETV

Date/time received in central Clerk's Office: 2004 NOV -2 PM 2:33

mailing deputy initials: ETV

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ED H. SMITH, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 94 C 920 |
| ) | |
| CITY OF CHICAGO, ) | Judge Rebecca R. Pallmeyer |
| ) | |
| Defendant. ) | NOV 0 3 2004 |

## MEMORANDUM OPINION AND ORDER

Twenty-three current or former aldermen of the City of Chicago sued the City under the First and Fourteenth Amendments for unequal treatment in the payment of attorneys' fees and expenses in connection with litigation surrounding the 1992 remap of Chicago's ward boundaries. Following a bench trial, the court entered judgment in favor of Plaintiffs in the amount of $246,354.07. See Smith v. City of Chicago, No. 94 C 920, 2004 WL 1300180 (N.D. Ill. June 10, 2004). Plaintiffs now seek to amend the judgment to provide for an award of pre-judgment interest. For the reasons set forth below, the motion is granted.

## BACKGROUND

The facts of this matter are more fully presented in this court's June 10, 2004 Memorandum Opinion and Order. See Smith, 2004 WL 1300180, at *1-7. This opinion assumes the reader's familiarity with the earlier decision and will summarize the relevant facts here only briefly.

In 1991, the Chicago City Council was required by law to draw a new map of the city's ward boundaries in accordance with the 1990 Census. Unable to agree on a map, the council members divided into two competing groups. One group consisted of 28 predominantly white aldermen who were generally sympathetic to Mayor Richard M. Daley's administration. This group, referred to as the "Administration Aldermen," promoted a map with 24 majority white wards, 19 majority African-American wards, and 7 majority Latino wards. A second group, 23 predominantly African-



American aldermen, were at that time often at odds with Mayor Daley's administration. These aldermen, referred to as "Opposition Aldermen," are Plaintiffs in this case; they supported a map having 21 or 22 majority white wards, 21 or 22 majority African-American wards, and 7 or 8 majority Latino wards. *Id.* at *1. The two proposals were submitted for a referendum vote by Chicago voters pursuant to Illinois state election law, and on March 17, 1992, voters approved the map submitted by the Administration Aldermen (the "Referendum Map"). *Id.*

This outcome produced three lawsuits. In *Barnett v. Daley*, No. 92 C 1683, nine African-American voters claimed the Referendum Map was unconstitutional and violated the Voting Rights Act, 42 U.S.C. § 1973. In *Smith v. Daley*, No. 92 C 2104 ("*Smith I*"), Plaintiffs in this case alleged a Voting Rights Act claim on behalf of all African-American residents of the City. Finally, in *Bonilla v. City Council of the City of Chicago*, No. 92 C 2666, six Latino voters sought changes to the map that would have created additional wards "alleged to have sufficient population to permit Latino residents in those wards to elect the candidates of their choice." *Smith*, 2004 WL 1300180, at *1. All of the City's aldermen were named as defendants in *Barnett*, but the court later dismissed them from the suit in December 1992. *See Barnett v. Daley*, 809 F. Supp. 1323 (N.D. Ill. 1992). None of the aldermen was named as a defendant in *Smith I* or *Bonilla*, but the Administration Aldermen voluntarily intervened as defendants in both cases. They also voluntarily intervened as defendants in *Barnett* after being dismissed from that suit. Ultimately, all three cases were assigned to Judge Brian Barnett Duff of this court, and *Smith I* was consolidated with *Barnett*. The Second Amended Complaint in *Barnett*, filed in 1993, did not name any aldermen as defendants, but the Administration Aldermen remained in the case voluntarily as defendant-intervenors. *Smith*, 2004 WL 1300180, at *1.

The Administration Aldermen and Opposition Aldermen separately retained private counsel to represent them in the aforementioned lawsuits. The City paid the attorneys' fees incurred by the Administration Aldermen for the time devoted to the case when they were named defendants as

2

well as for the time when they participated in the litigation voluntarily as intervenors. The City refused, however, to pay any legal fees on behalf of the Opposition Aldermen, claiming that "there is no basis in the Municipal Code of the City of Chicago to . . . authorize the payment of legal fees for those persons [who sue the City]." *Id.* at *2 (quoting Letter from Alderman Edward M. Burke to Alderman Lawrence S. Bloom of 2/16/93). The Opposition Aldermen responded with the instant lawsuit (*Smith II*) in which they allege that such disparate treatment violated their First and Fourteenth Amendment rights. *Id.* Judge Plunkett supervised discovery in the case over a lengthy period before partially granting the City's motion for summary judgment on August 1, 2002. *See Smith v. City of Chicago*, No. 94 C 920, 2002 WL 1770532 (N.D. Ill. Aug. 1, 2002), *amended in part*, 2003 WL 57035 (N.D. Ill. Jan. 7, 2003). Judge Plunkett held that Plaintiffs did not have standing to pursue injunctive and declaratory relief under the First Amendment, but allowed them to proceed with their claims for injunctive relief for the City's alleged racial discrimination and speech-based equal protection violations. *Id.* at *5, 6.

The case was ultimately reassigned to this court on May 20, 2003 pursuant to 28 U.S.C. § 294(b). Following an eight-day bench trial between September 17 and October 3, 2003, the court entered judgment in favor of Plaintiffs on June 10, 2004 and awarded damages in the amount of $246,354.07.[1] The court first found that Plaintiffs had standing to sue for reparative injunctive relief because it "would accord [Plaintiffs] the equal treatment to which they are entitled" notwithstanding that the disputed payment would be made to third parties (the attorneys). *Smith*, 2004 WL 1300180, at *7 (quoting *Smith*, 2002 WL 1770532, at *6). The court next determined that the City

---

[1] Plaintiffs had already been awarded extensive damages in connection with the *Smith I* and *Barnett* cases. *See Smith*, 2004 WL 1300180, at *3 ("[a]ll told, the combined total of the fees, costs and awards to Plaintiffs' attorneys for the Opposition Aldermen in *Smith I* and to the Plaintiffs' attorneys in *Barnett* exceeds eight million dollars") (internal quotations omitted). *See also Barnett v. City of Chicago*, No. 92 C 1683, 1999 WL 138813 (N.D. Ill. Mar. 5, 1999); *Barnett v. City of Chicago*, 122 F. Supp. 2d 915 (N.D. Ill. 2000), *aff'd*, 3 Fed.Appx. 546, 2001 WL 135842 (7th Cir. Feb. 16, 2001). That award, however, did not include the additional $246,354.07 in fees and costs incurred by the Opposition Aldermen awarded by this court.

3

violated Plaintiffs' right to equal protection by treating them differently than the Administration Aldermen based solely on their membership in a group that opposed the Referendum Map. *Id.* at *9-11. The City failed to offer any rational basis for the differential treatment and, thus, the court ordered the City to pay Plaintiffs' attorneys' fees.[2] *Id.* at *15-19.

On June 24, 2004, Plaintiffs filed a motion to alter the judgment to provide for an additional $168,956.24 in prejudgment interest. Plaintiffs requested prejudgment interest in their post-trial memorandum but did not provide any specific figure or calculation at that time. (Plaintiffs' Post-Trial Memorandum, at 72 ("Plaintiffs seek prejudgment interest calculated at the prime rate . . . on all outstanding relief requested above"). The City did not respond to Plaintiffs' initial request in its post-trial memorandum, but now objects that an award of prejudgment interest is improper in this case.

### DISCUSSION

A motion for prejudgment interest that is filed after entry of a final judgment is a motion to alter or amend judgment pursuant to FED. R. CIV. P. 59(e). *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 519-20 (7th Cir. 1993) (citing *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989)). As the Supreme Court explained, prejudgment interest "is an element of [plaintiff's] complete compensation" and is therefore "intertwined in a significant way with the merits of the plaintiff's primary case as well as the extent of his damages." *Osterneck*, 489 U.S. at 175. Plaintiffs claim that prejudgment interest is necessary in this case to put them in the position they would have been in had the City paid their attorneys' fees immediately. (Pl. Mem. ¶ 5; Pl. Reply, at 6)[3] (citing *Matter*

---

[2] Two of the Plaintiffs, Alderman Dexter Watson and Alderman Ricardo Munoz, never actually joined the three remap lawsuits and never incurred any attorneys' fees in that regard. Thus, they were awarded only nominal damages. A third Plaintiff, Alderman Madeline Haithcock, was not awarded any damages because she failed to present evidence to support such an award. *Smith*, 2004 WL 1300180, at *18.

[3] Plaintiffs' Motion to Amend this Court's Final Judgment to Provide for an Award of Pre-Judgment Interest is cited as "Pl. Mem. ¶ ___." Plaintiffs' Reply in Support of their Motion to

4

*of Oil Spill by Amoco Cadiz*, 954 F.2d 1279, 1331 (7th Cir. 1992) ("[m]oney today is not a full substitute for the same sum that should have been paid years ago"). The City argues that prejudgment interest is inappropriate because the court awarded injunctive relief and not money damages. The City also claims that prejudgment interest is not necessary to make Plaintiffs whole because Plaintiffs never lost the time value of their money. (Def. Mem., at 3-4.)[4]

A.   **Entitlement to Prejudgment Interest**

"The basic purpose of prejudgment interest is to put a party in the position it would have been in had it been paid immediately." *American Nat'l Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 935 (7th Cir. 2003). Prejudgment interest is designed to "ensure that an injured party is fully compensated for its loss," *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 195 (1995), and also to prevent unjust enrichment. *Trustmark Life Ins. Co. v. University of Chicago Hospitals*, 207 F.3d 876, 885 (7th Cir. 2000).

The City suggests that Plaintiffs are not entitled to prejudgment interest because they did not recover traditional compensatory damages. In ruling on the City's motion for summary judgment, Judge Plunkett held that Plaintiffs had no standing to pursue claims to recover attorneys' fees to the extent the legal representation was "on a purely contingent basis." *See Smith*, 2002 WL 1770532, at *5. In the City's view, "Judge Plunkett was clear that Plaintiffs were not entitled to traditional compensatory damages" and, thus, "this Court should disallow additional remedies that are necessarily linked to traditional compensatory damage awards." (Def. Mem., at 2.) Plaintiffs correctly note that the mere fact that Plaintiffs recovered equitable relief in the form of a reparative injunction does not alone preclude an award of prejudgment interest. (Pl. Reply, at 3.)

---

Amend this Court's Final Judgment to Provide for an Award of Pre-Judgment Interest is cited as "Pl. Reply, at __."

[4]   Defendant City of Chicago's Response in Opposition to Plaintiffs' Motion for an Award of Prejudgment Interest is cited as "Def. Mem., at __."

5

In *Securities and Exchange Comm'n v. Lipson*, 278 F.3d 656 (7th Cir. 2002), for example, the defendant violated securities laws by trading on inside information. *Id.* at 659. The judge ordered him to disgorge "the loss his insider trading had avoided" and to pay prejudgment interest and punitive damages. *Id.* at 662. In affirming the award on appeal, the Seventh Circuit noted that the disgorgement was "equitable in character" and that prejudgment interest is "an equitable remedy when, as in this case, the award to which it is attached is equitable." *Id.* at 663.

The City nonetheless argues that the reparative injunction itself has sufficiently "made the Plaintiffs whole" and that prejudgment interest would constitute an unfair windfall. (Def. Mem., at 5.) Plaintiffs, the City says, "did not lose the time value of money because their lawyers (who are not a party to this suit and are not Plaintiffs) would have directly received any payment of legal fees and 'used' that money." (Def. Mem., at 3.) The Seventh Circuit has cautioned that "prejudgment interest should not be thought of as a windfall; it is simply an ingredient of full compensation that corrects judgments for the lost time value of money." *Matter of Milwaukee Cheese Wisconsin, Inc.*, 112 F.3d 845, 849 (7th Cir. 1997). *See also Amoco Cadiz*, 954 F.2d at 1331 ("[p]rejudgment interest at the market rate puts both parties in the position they would have occupied had compensation been paid promptly"); *cf. Americontainer Ltd. Partnership v. Rankin*, 25 F.3d 1053 (Table) (7th Cir. 1994) ("when . . . the party to receive the award of damages has not been deprived of the use of any money, awarding pre-judgment interest would serve only as [a] penalty (or to the receiving party, a windfall").

Neither party has cited any cases where a party sought to recover prejudgment interest on money that should have been paid to a third party. The court notes that in the insurance context, courts have found that insurance companies are not entitled to prejudgment interest for the period of time prior to which they actually compensated insureds. Thus, in *Mutual Service Casualty Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 629-30 (7th Cir. 2001), the Seventh Circuit explained:

> Before it made payment to its insured, Mutual had full use of its funds; only after it compensated Jo Daviess for the loss caused by the bank was Mutual in any sense deprived of its money. At the same time, so far as we can discern from the record, Mutual itself did not pay Jo Daviess any interest on its loss. Consequently, awarding prejudgment interest to Mutual for the period of time antedating its payment to Jo Daviess would amount to a windfall.

Id. at 630. See also American Nat'l Fire Ins., 325 F.3d at 937 ("[b]ecause National Insurance, as subrogee, is only entitled to indemnity for its payment to Tabacalera, we believe that the district court did not err in computing prejudgment interest from the date that National Insurance paid Tabacalera's claim").

In this case, Plaintiffs are recovering the value of the legal fees that should have been paid to their attorneys. Plaintiffs were represented on a contingency basis and, thus, have not at any time been without the use of that money.[5] The court does not believe that Plaintiffs would unfairly profit from an award of prejudgment interest because it is the court's understanding that the money will all be turned over to Plaintiffs' attorneys. Significantly, those attorneys have in fact lost the time value of their money. At the same time, requiring the City to pay prejudgment interest will ensure that it is not unjustly enriched by its wrongful decision to withhold payment; the City has improperly used and benefitted from monies that should have been paid to Plaintiffs' attorneys years ago. See Amoco Cadiz, 954 F.2d at 1332 ("[a]n injurer allowed to keep the return on this money has profited by the wrong"). It is worth recalling here that the City decided to pay the attorneys' fees of the Administration Aldermen, not only when they were named as defendants in Barnett, but also when they chose to voluntarily intervene in all of the remap lawsuits. Regardless of the questionable merits of such a decision, the City then refused to pay any attorneys' fees voluntarily incurred by the Opposition Aldermen solely because they opposed the Referendum Map.

---

[5] There is no evidence that one of the Plaintiffs, Alderman Jesus Garcia, had a contingency agreement with his attorneys; he did, however, owe his attorneys $7,000 in unpaid fees. Smith, 2004 WL 1300180, at *4. Thus, it does not appear that Alderman Garcia was deprived of the use of his money.

7

A reparative injunction "requires the defendant to restore the plaintiff to a preexisting entitlement." *Smith*, 2003 WL 57035, at *1 (citing Dan B. Dobbs, DOBBS LAW OF REMEDIES § 2.9 at 225 (2d ed. 1993)). The court has determined that Plaintiffs were entitled to equal treatment in the form of paid attorneys' fees. The City paid the legal expenses of the Administration Aldermen contemporaneously with the representation, and prejudgment interest will ensure that Plaintiffs receive the equivalent value of their representation as well. The court recognizes that the law on this issue is largely undeveloped. On the facts presented, however, Plaintiffs' motion to amend the judgment to provide for prejudgment interest will be granted on a showing that all of the money received in this case has been paid to their legal counsel.

### B. Calculation of Prejudgment Interest

Prejudgment interest is measured from "the time the claim accrues until judgment is entered." *West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987). In calculating prejudgment interest, courts "should use the 'prime rate' – that is the rate that banks charge for short-term unsecured loans to creditworthy customers." *Amoco Cadiz*, 954 F.2d at 1332. In addition, "compound prejudgment interest is the norm in federal litigation." *Id.* Plaintiffs have submitted a detailed prejudgment interest calculation from the accounting firm of Weltman, Katz, Mikell & Nechtow, Ltd. The firm used the prime rate "over the course of the period of the interest accrual"; calculated prejudgment interest beginning on "the respective dates upon which each principal sum was created" – March 9, 1992 for the law firm of Miner, Barnhill & Galland, and July 19, 1993 for the law firm of Gessler, Hughes, Socol, Piers, Resnick & Dym – and ending on June 10, 2004, the date of judgment; and compounded the interest on a monthly basis. (Ex. E to Pl. Mem.) The City does not dispute these specific calculations. Thus, Plaintiffs' request for $168,956.24 in prejudgment interest is granted.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion to Amend this Court's Final Judgment (Docket No. 262-1) is granted and Plaintiffs are awarded $168,956.24 in prejudgment interest. Plaintiffs must provide the court with documentation confirming that all of the monies received in this matter were paid to their attorneys.

ENTER:

Dated: November 2, 2004

REBECCA R. PALLMEYER
United States District Judge